# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER BRAY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>GILBERT VILLEGAS, et al.,<br><br>　　　　　　Defendants. | Case No. 1:18-cv-00978-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff Amber Bray ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action under 42 U.S.C. § 1983. On May 10, 2019, the Court screened Plaintiff's complaint and granted her leave to amend. (ECF No. 9.) Plaintiff's first amended complaint, filed on May 24, 2019, is currently before the Court for screening. (ECF No. 10.)

**I.　　Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at the Central California Women's Facility ("CCWF") in Chowchilla, California, where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Gilbert Villegas, RN; (2) Dr. Albert Khoo; (3) Jacqueline Mbeneya, RN; (4) Brown, RN; and (5) Jones, LVN. This action arises out of alleged inadequate medical care in July 2017.

In relevant part, Plaintiff alleges that on July 7, 2017, she was sent to the Facility C Medical Clinic by Officer D. Anguiano. Plaintiff was experiencing swelling, tearing, redness, pain and photosensitivity in her left eye and a white spot had developed on the iris and pupil of her right eye. At the clinic, Plaintiff was seen by Defendant Villegas, and she explained her symptoms to him and showed him her eye. Defendant Villegas then escorted Plaintiff out of his office and reported to Defendant Dr. Khoo's office. After leaving Dr. Khoo's office, Defendant Villegas called Plaintiff back to his office. Defendant Villegas informed Plaintiff that Defendant Dr. Khoo believed she had bacterial conjunctivitis. When Plaintiff asked about the white spot on her eye, Defendant Villegas indicated that it was nothing and that surgery was done on such spots when they cover

50% of the eye.  Defendant Villegas told Plaintiff that eye drops were being prescribed, which she could pick up during the evening meal.  That evening, Plaintiff picked up the prescribed eye drops and complied with the dosing instructions.

On July 8, 2017, Plaintiff woke from a fitful sleep and had to pry her eye open.  She had zero visual acuity in her left eye.  Her left eye also was painful, swollen and tearing.  Approximately 45 minutes later, one of Plaintiff's friends observed her eye.  Officer Gallindo was contacted, and after being informed of Plaintiff's condition, called the prison's emergency room ("Building 805").

Plaintiff was escorted to Building 805 by Officer J. Alonso.  Shortly after arrival, Plaintiff was escorted to the treatment area and seen by Nurse M. Coddington, Nurse H. Avalos and an unknown licensed vocational nurse.  After examining Plaintiff's eye, Nurse Coddington called the medical officer of the day, Dr. B. Showalter.  Nurse Coddington then informed Plaintiff that she would be sent to Community Regional Medical Center ("CRMC") by ambulance.

Upon arrival at the ("CRMC") emergency department, Plaintiff was evaluated, and an ophthalmological consult was requested.  Following testing and examination, the ophthalmologist informed Plaintiff that she had an ulcerated cornea, which was vision threatening.  Plaintiff was admitted to CRMC for treatment, which consisted of pain management and antibiotic eye drops.  After 48 hours, Plaintiff was instructed that her eye drops needed to continue every waking hour.

On July 10, 2017, Plaintiff was informed that she would be discharged from CRMC.  She also was informed that she was to adhere to the eye drop regimen in order to preserve her vision.  She further was informed that the prison was being contacted about her eye drop regimen and the drops would be available once she arrived at CCWF.  Plaintiff was then discharged from CRMC and transported back to CCWF.

Upon arrival at CCWF, Plaintiff was evaluated in Building 805 by Defendant Mbeneya, who informed Plaintiff that she could return to her housing unit.  Plaintiff asked Defendant Mbeneya about her eye drops because she had been instructed to use them every waking hour by the ophthalmologist, and she explained that her vision was at issue.  Defendant Mbeneya reported that she had not read the discharge summary because she wanted to eat her lunch.  Defendant Mbeneya never told Plaintiff that she would get her eye drops, and none were issued to Plaintiff

3

that evening. Based on Plaintiff's understanding, Defendant Mbeneya was present in the prison's emergency room when CRMC staff called the prison. Plaintiff was without her eye drops for at least thirteen hours.

On July 11, 2017, Plaintiff was called to Building 805 to pick up the eye drops. Plaintiff then saw ophthalmologist Dr. Nguyen, who prescribed additional eye drops and an eye ointment. Dr. Nguyen also told Plaintiff that she would see another ophthalmologist.

On July 12, 2017, Plaintiff was transported to Natural Vision and saw Dr. Kaye, an ophthalmologist. Dr. Kaye performed a biopsy of Plaintiff's eye and prescribed oral antibiotics. Dr. Kaye told Plaintiff that she was a very sick woman. Plaintiff's vision was approximately 20/400 with corrective lenses.

Following her visit with Dr. Kaye, Plaintiff saw Nurse Practitioner K. Pham, who issued a temporary order for Plaintiff to wear sunglasses for photosensitivity and placed the order for the antibiotics prescribed by Dr. Kaye. Plaintiff took the oral antibiotics as prescribed.

On July 15, 2017, Plaintiff began to experience decreased visual acuity and heart palpitations. Plaintiff informed Officer Sauceda, who called Building 805 and spoke with Defendant Jones. After a brief conversation, Officer Sauceda told Plaintiff that someone would call him back and let him know whether Plaintiff would be seen. Approximately thirty minutes later, Officer Sauceda told Plaintiff that he had spoken with Defendant Brown, who had refused to see Plaintiff.

Plaintiff called her father and several friends and asked them to call CCWF so that she could receive medical treatment. Pauline Watson and Diane Robertson both called Building 805 and were connected with Defendant Brown, who still refused to see Plaintiff. David Byers and Chad Hazen both spoke with the watch commander later that evening. Plaintiff was later advised by Officer Sauceda that Lieutenant Glanzer would speak with her about the concerns of her friend and family, but that Lieutenant Glanzer could not ensure that Plaintiff would be seen by medical. Plaintiff did not speak with Lieutenant Glanzer that evening.

On July 26, 2017, Plaintiff saw Defendant Dr. Khoo for a follow-up visit. Plaintiff asked Defendant Dr. Khoo to continue the order for Plaintiff to wear her sunglasses. Defendant Dr. Khoo

4

said he could not do that. Plaintiff also expressed distress that her vision was still markedly worse in her left eye. Defendant Dr. Khoo told Plaintiff not worry and provided no information regarding her treatment or prognosis.

Plaintiff claims that over the last year, she has continued to experience less visual acuity in her left eye and does not know her treatment plan. She was informed at her last appointment at Natural Vision that the scar on her eye was permanent and nothing could be done for it. Plaintiff asserts that she has permanently lost visual acuity in her left eye.

Plaintiff alleges a violation of her Eighth Amendment rights and a violation of state law. She seeks injunctive relief, along with compensatory and punitive damages.

### III. Discussion

### A. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's complaint fails to adequately link Defendant Jones to her claims for deliberate indifference to serious medical needs. At best, Plaintiff alleges that Officer Sauceda spoke with Defendant Jones, who would inquire about treatment. There is no indication from the allegations in the complaint that Defendant Jones spoke to Plaintiff or was otherwise responsible for her treatment or any alleged denial of that treatment. In short, Plaintiff fails to allege sufficient facts to link Defendant Jones to any alleged constitutional violation. Plaintiff does not allege what

5

Defendant Jones did or did not do that resulted in violation of Plaintiff's constitutional rights. Plaintiff has been unable to cure this deficiency.

**B.     Eighth Amendment**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo Cty. Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. Cty. of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical

professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) ), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) ). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Defendants Villegas and Khoo

Plaintiff appears to complaint about the treatment provided to her by Defendants Villegas and Khoo on July 7, 2017. At best, these allegations, which indicate that Plaintiff was evaluated and received medications, suggest negligence or possible gross negligence in diagnosing and treating Plaintiff's eye condition. This is not sufficient to state a cognizable claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment. Estelle, 429 U.S. at 106 (negligence); Wood, 900 F.2d at 1334 (gross negligence).

Plaintiff also appears to complain about Defendant Khoo's failure to continue an order for Plaintiff to wear sunglasses or to detail her continued treatment plan. These allegations also are insufficient to support an Eighth Amendment deliberate indifference claim. Defendant Dr. Khoo's refusal to continue an order for Plaintiff to wear sunglasses amounts only to a disagreement between a physician and an inmate regarding the appropriate course of treatment for her condition. Snow, 681 F.3d at 987. Any purported failure to detail Plaintiff's continued treatment does not evidence deliberate indifference to a serious medical need and there is no indication that Plaintiff failed to receive needed treatment for her eye condition or that she suffered any harm from any failure to detail Plaintiff's treatment plan. Plaintiff has been unable to cure these deficiencies.

Defendant Mbeneya

Plaintiff complains that Defendant Mbeneya did not provide or mention Plaintiff's eye drops after her return from CRMC. Plaintiff's allegations do not indicate that Defendant Mbeneya was responsible for prescribing or administering the eye drops after Plaintiff's return from CRMC.

7

At best, Plaintiff's allegations suggest negligence or gross negligence by Defendant Mbeyena in failing to review Plaintiff's discharge papers. Plaintiff does not allege that she suffered any harm, such as the loss of visual acuity or pain, from Defendant Mbeyena's alleged failure to review the discharge papers or provide eye drops. Plaintiff's allegations also indicate that she received her eye drops the following day, and also was evaluated by an ophthalmologist and received additional prescriptions and treatment for her condition. Plaintiff has been unable to cure the deficiencies in her allegations involving Defendant Mbeyena.

Defendant Brown

Plaintiff complains that Defendant Brown refused to see Plaintiff for treatment on July 15, 2017, when Plaintiff complained of decreased visual acuity and heart palpitations. At best, Plaintiff has alleged a difference of opinion between herself and medical professionals regarding her need for treatment, which does not rise to an Eighth Amendment violation. There are no allegations in the amended complaint suggesting Plaintiff's failure to receive treatment on July 15, 2017, resulted in any harm or that she required any additional treatment for her eyes or heart. Indeed, Plaintiff's allegations do not indicate that Plaintiff sought further treatment for any condition after that date until July 26, 2017. Plaintiff has failed to cure the deficiencies in this claim.

**C.  State Law Claims**

Plaintiff asserts a violation of the California Constitution. Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367. As Plaintiff has not stated a cognizable claim for relief under federal law, it will be recommended that the Court decline to exercise supplemental jurisdiction over her state law claims.

**IV. Conclusion and Recommendation**

For the reasons discussed, the Court finds that Plaintiff has failed to state a cognizable claim for relief. Despite being provided with the relevant legal standards, Plaintiff has been unable to cure the deficiencies in his complaint. Further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Furthermore, for the reasons stated above, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's federal claims be dismissed with prejudice based on Plaintiff's failure to state a cognizable claim upon which relief may be granted; and

2. The Court decline to exercise jurisdiction over Plaintiff's state law claims and dismiss those claims without prejudice.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 10, 2019** /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE